UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNIVERSITY OF NOTRE DAME | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:12CV253RLM |
| | ) | |
| KATHLEEN SEBELIUS, in her official capacity as Secretary of the U.S. Department of Health and Human Services; HILDA SOLIS, in her official capacity as Secretary of the U.S. Department of Labor, TIMOTHY GEITHNER, in his official capacity as Secretary of the U.S. Department of Treasury; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF LABOR; and U.S. DEPARTMENT OF TREASURY, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

The Patient Protection and Affordable Care Act requires employer health plans to cover women's "preventive care," a term left for definition by a division of the Department of Health and Human Services. 42 U.S.C. § 300gg-13(a)(4). HHS announced guidelines requiring health plans to cover contraception and abortion-inducing drugs. for plan years after August 1, 2012. Penalties for non-compliance could range from $100 a day per individual to $2,000 per employee per year. See 26 U.S.C. §§ 4980D(a), (b)(1), 4980H(a), (c)(1), (c)(2)(D)(i)(I). Soon after the announcement, HHS amended the guidelines, creating an exemption from the

requirement for what the guidelines called "religious employers." Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services, 76 Fed. Reg. 46,621, 46,626 (Aug. 3, 2011) (codified at 45 C.F.R. § 147.130(a)(1)(iv)(A)-(B)).

Several months later, HHS finalized the regulation, 77 Fed. Reg. 8725, 8725 (Feb. 15, 2012), but announced a year-long "safe harbor" from enforcement for nonprofit entities of a certain type, including the University of Notre Dame. HHS announced that it would amend the regulations before the end of the safe harbor to accommodate those entities by requiring their insurers to provide cost-free coverage for the contraceptive and abortion-related services. In furtherance of the anticipated amendment, HHS issued an Advanced Notice of Proposed Rulemaking ("ANPRM"). Certain Preventive Services Under the Affordable Care Act, 77 Fed. Reg. 16,501 (Mar. 21, 2012). The ANPRM doesn't specify what the changes or accommodations will be.

This left the University of Notre Dame in a difficult spot. Notre Dame is a Catholic educational institution. It has 11,000 students of many faiths and creeds, and 5,000 employees whose religious preferences are unrecorded. Notre Dame abides by Ex Corde Ecclesia, the church document that governs Catholic universities. Notre Dame offers health coverage to its employees and students. The employee plan is self-insured; Aetna insures the student plan. The plan year begins on January 1 for employee plans and on August 15 for the student plan.

The employee plan covers about 11,000 people, and the health plan covers some 2,700 people.

Due to the Ex Corde Ecclesia, Notre Dame's health plans exclude coverage for abortifacients, contraception (when prescribed for contraceptive purposes), and sterilization. Notre Dame's religious beliefs prohibit Notre Dame from paying for, providing, or facilitating abortion, sterilization, and contraception, or speech promoting those services.

Given the uncertainty about what regulations ultimately will emerge, Notre Dame can't know how to proceed. But the budget for Notre Dame's next July-June fiscal year is nearly finalized, requiring the university to set aside significant funds for anticipated costs it might incur in connection with the regulations, and to hire outside consultants to provide actuarial services analyzing scenarios related to those regulations. The budgetary and health-plan decisions, Notre Dame says, must be made now. When only minor changes are made to health plans, eight months of lead time is needed.

Accordingly, Notre Dame brings this suit against HHS and its Secretary, the Department of Labor and its Secretary, and the Treasury Department and its Secretary, seeking to enjoin enforcement of the preventive services requirement against it. Notre Dame contends that the requirement infringes its rights under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedures Act. Notre Dame has moved for an expedited hearing

on its motion for preliminary and permanent injunctive relief. An amicus brief filed by the American Center for Law & Justice and 79 members of Congress supports Notre Dame's religious freedom claims. The defendants have filed their opposition to those motions, but more immediately, also have moved to dismiss on grounds of ripeness and standing. The court must address its authority to hear the case at all before considering the matter of injunctive relief, so the court begins with the motion to dismiss.

This case was recently reassigned due to recusal by the judge to whom it originally was assigned. So as to rule without further delay (given the nature of the injury Notre Dame claims) the court rules on the papers, without hearing argument.

This is one of dozens of similar suits filed across the nation, and courts have ruled on similar dismissal motions in several of those cases. Some of those rulings dealt with plaintiffs not in the safe harbor; as will be seen, those plaintiffs' circumstances are too dissimilar to Notre Dame's for those rulings to be helpful. See, e.g., Grote Indus., LLC v. Sebelius, No. 4:12cv00134-SEB-DML S.D. Ind. Dec. 27, 2012); Hobby Lobby Stores, Inc. v. Sebelius, 870 F.Supp.2d 1278 (W.D.Okla. 2012), *application for injunction denied* 2012 WL 6698888 (U.S., Dec. 26, 2012) (Sotamayor, J.); Tyndale House Publishers, Inc. v. Sebelius, 2012 WL 5817323 (D.D.C., Nov. 16, 2012); Legatus v. Sebelius 2012 WL 5359630 (E.D.Mich., Oct. 31, 2012); O'Brien v. U.S. Department of Health and Human Services, 2012 WL

4

4481208 E.D.Mo., Sept. 28, 2012); Newland v. Sebelius, 2012 WL 3069154 (D.Colo., July 27, 2012).

Of the rulings involving plaintiffs in the safe harbor, all but one have found the claims unripe and the plaintiffs to have lacked standing. Zubik v. Sebelius, 2012 WL 5932977 (W.D.Pa., Nov. 27, 2012); Catholic Diocese of Nashville v. Sebelius, 2012 WL 5879796 (M.D.Tenn., Nov. 21, 2012); Wheaton College v. Sebelius, 2012 WL 3637162 (D.D.C. 2012), *appeal held in abeyance* 2012 WL 6652505 (D.C.Cir. 2012); Belmont Abbey College v. Sebelius, 2012 WL 2914417 (D.D.C. 2012), *appeal held in abeyance* sub nom Wheaton College v. Sebelius, 2012 WL 6652505 (D.C.Cir. 2012); Nebraska ex rel. Bruning v. U.S. Dept. of Health and Human Svcs., 2012 WL 2913402 (D.Neb. 2012); *contra*, Roman Catholic Archdiocese of New York v. Sebelius, 2012 WL 6042864 E.D.N.Y. ,2012). None of those rulings bind this court, but the majority are persuasive. Notre Dame's claims aren't ripe, and they don't have standing to bring them.

Both conclusions flow from the government's creation of a safe harbor for certain employers (including Notre Dame) while it re-works the regulation. As a result, Notre Dame faces no penalty or restriction based on the existing regulatory requirement.

The Constitution only empowers federal courts to decide cases or controversies. U.S. Const. art. III, § 2; see also Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Accordingly, the plaintiff in a federal suit

5

must have standing to bring the claim — "such a personal stake in the outcome of the controversy' as to warrant [its] invocation of federal-court jurisdiction." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (internal quotations omitted). A plaintiff without standing asks the court to exceed its constitutional authority. To have standing, the plaintiff must show a concrete and imminent injury-in-fact, a causal relationship between the injury and defendants' challenged conduct, and a likelihood that a favorable decision will redress the injury suffered. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

A plaintiff challenging an administrative regulation also must show that its claim is "ripe," meaning that the regulation is sufficiently final that the controversy is ready for judicial review. Abbott Lab. v. Gardner, 387 U.S. 136, 149 (1967), *overruled on other grounds*, Califano v. Sanders, 430 U.S. 99, 105 (1977) and Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). The ripeness doctrine protects the separation of federal powers by keeping the courts out of the rule-making process until the agency has crystalized its action sufficiently. See Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 807-808 (2003).

Turning first to ripeness, the challenged regulatory requirement isn't sufficiently final. Notre Dame is correct that regulation itself claims to be final, 45

C.F.R. § 147.130(a)(1)(iv), but events following the regulation's adoption make clear that it isn't final. The defendants have announced their intention to re-fashion the rule in an effort to address concerns such as those Notre Dame has raised and, by virtue of the safe harbor provision, have exempted Notre Dame from the rule for the time believed to be required for the re-fashioning. The government is entitled to a presumption of good faith in such promises. Belmont Abbey College v. Sebelius, 2012 WL 2914417 at *9 (D.D.C., July 18, 2012) (citing Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir.2009), Comcast Corp. v. F.C.C., 526 F.3d 763, 769 n. 2 (D.C.Cir.2008), and Adair v. England, 183 F.Supp.2d 31, 60 (D.D.C.2002)).

CSI Aviation Servs., Inc. v. U.S. Dep't of Transp., 637 F.3d 408, 414 (D.C. Cir. 2011), upon which Notre Dame relies, is not to the contrary. The CSI Aviation court found that although the agency's statement that it planned to engage in further rulemaking didn't make the plaintiff's complaint moot, 637 F.3d at 414, the plaintiff's challenge to Department of Transportation warning letters was ripe, in significant part because the letters' statement of position "gave no indication that it was subject to further agency consideration or possible modification." 637 F.3d at 413, *quoting* Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 436-437 (D.C. Cir. 1986). Our defendants have taken prompt and concrete action — the safe harbor provision — indicating that its rule is subject to reconsideration and modification. Although Notre Dame is correct that an agency can't "stave off judicial review of

7

a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way," American Petroleum Institute v. EPA, 683 F.3d 382, 388 (D.C. Cir. 2012), none of the cases on which Notre Dame relies involve any parallel to the safe harbor provision that protects Notre Dame and others like it from the challenged rule.

Turning back to the question of standing, the challenged regulatory requirement isn't the cause of the injuries of which Notre Dame complains. Taking the defendants at their word concerning the intended reworking of the rule, this regulatory requirement won't require Notre Dame to conduct itself in ways its Catholic mission forbids. This regulation's replacement might do so, but no one can say because that future rule hasn't been promulgated. It is enough to know that the present regulation is to be replaced by another, and the safe harbor is protecting Notre Dame from harm to its religious precepts until that replacement occurs.

Notre Dame points to another class of injury: the need for enough time to prepare for compliance with this regulatory requirement or whatever replaces it. That injury, though, isn't caused by the regulatory requirement as is applies to others today; it flows from the brevity of the safe harbor provision. A replacement rule that leaves Notre Dame's religious principles unharmed would cause the same operational problems if Notre Dame isn't given enough time to prepare for compliance. Notre Dame has cited a variety of cases for the proposition that the

8

operational costs of delay can make a final rule ripe for challenge, *e.g.*, Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Devel. Comm., 461 U.S. 190 (1983); Miller v. Brown, 462 F.3d 312 (4th Cir. 2006); Metropolitan Milwaukee Assn' of Commerce v. Milwaukee, 325 F.3d 879 (7th Cir. 2003); Gary D. Peake Excavating, Inc. v. Town Bd. of Town of Hancock, 93 F.3d 68 (2d Cir. 1996); Triple G Landfills, Inc. v. Board of Commissioners of Fountain County, 977 F.2d 287 (7th Cir. 1992), but those courts and parties could identify the rule under attack. Notre Dame can't identify the regulatory requirement that ultimately might apply to it.

The present regulatory requirement isn't sufficiently final for review to be ripe because the defendants have announced it will be modified and have underscored that announcement by providing Notre Dame with a safe harbor that protects it from the regulation as it exists today. Notre Dame lacks standing to attack the present regulatory requirement because it isn't subject to that requirement, and, taking the defendants at their word, never will be subject to the present regulation. The defendants' dismissal motion must granted.

The court GRANTS the defendants' motion to dismiss (doc. #16). Because the court has no jurisdiction over a case that doesn't present a case or controversy involving a plaintiff with standing, the court DENIES AS MOOT the plaintiff's motions for preliminary injunction (doc. #28) and for consolidated trial and injunction hearing pursuant to Rule 65(a).

SO ORDERED.

ENTERED:     December 31, 2012

                             /s/ Robert L. Miller, Jr.
                        Robert L. Miller, Jr., Judge
                        United States District Court